UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Bruce A. Menard,

       Plaintiff,

       v.                                                  Civil Action No. 2:11-CV-42

Michael J. Astrue,
Commissioner of Social Security,

       Defendant.

## REPORT AND RECOMMENDATION
(Docs. 14, 19)

Plaintiff Bruce Menard brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability insurance

benefits. Pending before the Court are Menard's motion to reverse the Commissioner's

decision (Doc. 14), and the Commissioner's motion to affirm the same (Doc. 19).

For the reasons stated below, I recommend that Menard's motion (Doc. 14) be

GRANTED, the Commissioner's motion (Doc. 19) be DENIED, and the matter be

REMANDED for further proceedings and a new decision.

## Background

Menard was thirty-four years old on his alleged disability onset date of

January 21, 2004. He has a high school education, plus one year of college in culinary

arts and some course work in plumbing. Between 1990 and 2004, Menard held many

jobs, including as an apprentice plumber, a delivery driver, a pizza chef, a floor installer, an ice-cream maker, a line cook, a mail clerk, a pool plasterer, and a tree clearer. During most of the alleged disability period, he lived with his girlfriend and two young children.

Menard has a long history of pain, and more recent symptoms of anxiety and depression. Specifically, he suffers from joint pain in his feet, ankles, knees, thighs, hips, back, neck, shoulders, elbows, wrists, and hands. As one of his medical providers stated, "he has all kinds of pain in all kinds of places." (AR 621.) He has had four surgical procedures on his knees, steroid injections, and physical therapy; he testified in July 2010 that he was taking eighteen pills a day at that time (AR 37); and he has been diagnosed with arthritis, osteoporosis, degenerative joint disease[1], carpal tunnel syndrome, and fibromyalgia[2]. He also has sleeping problems, resulting in fatigue. At the administrative hearing, Menard testified that his "body hurts constantly"; he can "barely walk"; and he is unable to work because he is "not reliable." (AR 36, 37.) He further stated that, although he is responsible for caring for his young children including transporting them to and from school, and although he is sometimes able to do household chores, most of the time he sits at home and does nothing because his body is sore. (AR 41-42; 215.) In September 2008, Menard filed applications for social security income and disability insurance benefits. In his disability application, he alleged that he was forced to stop

---

[1] "Degenerative joint disease," also known as "osteoarthritis," represents a complex response of joint tissues to the aging process, as well as to genetic and environmental factors, characterized by degeneration of cartilage, bone remodeling and overgrowth." LEE R. RUSS, ET AL., 7 ATTORNEYS MEDICAL ADVISOR § 68:12 (Aug. 2011).

[2] "Fibromyalgia" is defined as "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances." STEDMAN'S MEDICAL DICTIONARY 725 (28th ed. 2006).

working on January 21, 2004, when he broke his ankle.  (AR 207.)  He further alleged

that, since that date, his condition worsened; and he was "in constant pain throughout the

joints of [his] body."  (*Id.*)  He asserted that his osteoporosis, arthritis, joint deterioration,

and fibromyalgia limited his ability to work.  (*Id.*)  Menard's application was denied

initially and upon reconsideration, and he timely requested an administrative hearing.

The hearing was conducted on July 12, 2010 by Administrative Law Judge ("ALJ") Dory

Sutker.  (AR 25-68.)  Menard appeared and testified, and was represented by non-

attorney representative Michael Milne.  In addition, vocational expert ("VE") Cynthia

Ward and Menard's mother, Janet Osmer, appeared and testified at the hearing.  Osmer

testified that she saw Menard every day, that he appeared to be in pain "all the time," and

that he often became upset and discouraged because he could not keep a job or do

activities with his children.  (AR 55-57.)

On July 19, 2010, the ALJ issued a decision finding that Menard was not disabled

under the Social Security Act from his alleged onset date through the date of the decision.

(AR 9-18.)  A few months later, the Decision Review Board ("DRB") notified Menard

that it had not completed its review during the time allowed, making the ALJ's decision

final.  (AR 3-5.)  Having exhausted his administrative remedies, Menard filed the

Complaint in this action on February 14, 2011.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability

claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Menard had not engaged in substantial gainful activity since his alleged onset date of January 21, 2004. (AR 11.) At step two, the ALJ found that Menard had the following severe impairments: fibromyalgia, degenerative joint disease of the right shoulder, and anxiety disorder. (*Id.*) Conversely, the ALJ found that Menard's carpal tunnel syndrome was non-severe, given that it was not expected to meet the twelve-month durational requirement. (AR 11-12.) At step three, the ALJ found that none of Menard's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 12-13.)

Next, the ALJ determined that Menard had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), involving "routine, repetitive tasks, and only occasionally reaching or lifting overhead with his right upper extremity." (AR 13.) Given this RFC, the ALJ found that Menard was unable to perform his past relevant work as a floor sander, an apprentice plumber, a pool plasterer, and a cook. (AR 16.) Based on testimony from the VE, however, the ALJ determined that Menard could perform other jobs existing in significant numbers in the national economy, including the following "light" jobs: school bus monitor, fast food worker, counter attendant, and cafeteria attendant; and the following "sedentary" jobs: food and beverage clerk, call-out operator, film and touch-up inspector, and assembler. (AR 17.) The ALJ concluded that Menard had not been under a disability from the alleged onset date of January 21, 2004 through the date of the decision. (AR 17-18.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

I.      **The ALJ Erred in Her Assessment of Treating Physician Dr. Podell's Opinions.**

Menard asserts that the ALJ erred in her assessment of Dr. David Podell's opinions, and that the ALJ should have accorded controlling weight to those opinions. Dr. Podell is a rheumatologist who treated Menard's chronic musculoskeletal problems from July 2007 through March 2009.  (*See* AR 324-447, 455, 604-12.)  In November 2008, Dr. Podell opined that, due to Menard's fibromyalgia, bursitis[3], tendonitis, osteoarthritis, and fatigue, Menard could sit for less than two hours; stand for less than one hour; walk for less than one hour; and sit, stand, and walk in combination for less than one hour.  (AR 446.)  Dr. Podell explained that sustained activities would cause increased pain and difficulty performing activities of daily living, and that Menard could not consistently sustain activities over a normal workweek.  (*Id.*)  The Doctor further stated that Menard "truly has a painful j[oin]t muscle syndrome," which was clinically supported by x-rays showing osteoarthritis and physical examination revealing tender points and decreased range of motion.  (AR 447.)  In January 2009, Dr. Podell opined that Menard had "severe musculoskeletal pain due to multiple entities, including . . . joint

---

[3]   "Bursitis" is defined as "inflammation of one or more bursae, some 80 of which exist on each side of the body. . . .  Inflammation can result from many causes, several of which tend to occur at work, but may also occur during other activity, such as repeated friction or pressure above the bursa, or small but repetitive traumas."  LEE R. RUSS, ET AL., 7 ATTORNEYS MEDICAL ADVISOR § 68:74 (Aug. 2011). The usual effects of bursitis are pain, swelling, tenderness, and limitation of motion.  *Id.* at § 68:75.

osteoarthritis[,] . . . rotator tuff [sic] tendonitis[, and] degenerative . . . injuries to his right knee." (AR 455.) The Doctor further stated that Menard had "significant fibromyalgia" with poor sleep pattern, chronic pain, and chronic depression. (*Id.*) Dr. Podell concluded: "At this point, I feel that [Menard] has a chronic illness. I know that he is trying to re[-e]nter the work force, but . . . his multiple co-morbid illnesses make it difficult for him to work . . . ." (*Id.*)

In March 2010, Dr. Podell opined in a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that Menard could lift or carry only up to ten pounds and only occasionally; sit for only one-to-two hours at a time; stand for only 30-60 minutes at a time; walk for only 10-15 minutes at a time; reach overhead only occasionally and never reach in all other directions; use foot controls only occasionally; and never kneel, crouch, or crawl. (AR 608-09.) Despite these severe limitations, the Doctor opined that Menard was able to perform activities like shopping, traveling without a companion, ambulating without an assistive device, using public transportation, preparing a simple meal, and caring for his personal hygiene. (AR 612.) In a letter from the same period (March 2010), Dr. Podell described his treatment of Menard, stating:

> [Menard] has had x-rays of his hands and joints and has shown degenerative changes from time to time. . . . Over the course of the years since I have seen him . . ., he has [had] chronic pain, evidence of epichondylitis [sic][4], fibromyalgia with tender points, poor sleep pattern, . . . depression, osteoarthritis, B12 deficiency, and neuropathy. He has also

---

[4] "Epicondylitis," otherwise known as "tennis elbow," is "an inflammation of the . . . upper arm bone at the lateral epicondyle – on the outside portion of the elbow." LEE R. RUSS, ET AL., 8 ATTORNEYS MEDICAL ADVISOR § 72:10 (Aug. 2011). Pain usually develops gradually; point tenderness may be present and is aggravated when the extensor muscles of the wrist are stretched. *Id.* The condition involves "minimal local swelling and full range of motion at the elbow," but "[s]ymptoms may progress to the point where picking up a coffee cup or turning a door knob are difficult." *Id.*

sustained four surgical procedures on his knees. . . . I have treated him with various modalities including intraarticular steroid injections, injections of bursas and tendons, chronic medication for pain, . . . physical therapy, and [non-steroidal anti-inflammatory drugs]. He continues to have significant issues regarding chronic pain from . . . his fibromyalgia, post-traumatic osteoarthritis, and tendon and bursa inflammatory conditions.

(AR 605.)

Inexplicably, the ALJ assigned weight only to the opinions expressed by Dr. Podell in his Medical Source Statement (referred to in the ALJ's decision as Dr. Podell's "assessment"), neglecting to discuss or analyze Dr. Podell's other significant opinions (described above). The ALJ first stated that she afforded "little weight" to Dr. Podell's "assessment," and later stated that she was "unable to give Dr. Podell's assessment [any] weight." (AR 15.) The ALJ justified her decision to afford little-to-no weight to Dr. Podell's opinions by stating that Dr. Podell's assessment was (a) inconsistent with the medical evidence, including Dr. Podell's own treatment records; and (b) inconsistent with Menard's "demonstrated abilities at the [administrative] hearing." (*Id.*) I find that the ALJ's analysis was inadequate and contrary to the evidence.

The opinion of a claimant's treating physician regarding the nature and severity of an impairment is entitled to considerable deference and is given "controlling weight," so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). Even when a treating physician's opinion is not given controlling weight, the opinion is still

entitled to significant consideration, given that such physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). "Under the Commissioner's regulations, the ALJ must consider the following factors when assigning weight to the opinion of a treating source: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the treating physician presents relevant evidence to support an opinion, particularly medical signs and laboratory findings; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist in the area relating to [his or] her opinion; and (6) other factors which tend to support or contradict the opinion." *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2)-(6)). After considering these factors, the ALJ must "give good reasons" for the weight afforded to the treating physician's opinion. *Burgess*, 537 F.3d at 129 (quotation marks and citation omitted). "Failure to provide such 'good reasons' . . . is a ground for remand." *Id.* at 129-30 (quotation marks and citation omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

Here, the ALJ did not consider each of the above factors, nor did she consider whether Dr. Podell's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques. Instead, the ALJ primarily relied on four particular statements made in Dr. Podell's treatment notes to support her decision to reject Dr. Podell's opinions. Those statements are as follows, as noted in the ALJ's decision: (1) Menard's left elbow pain has increased "while working on his truck" (AR 331); (2) Menard "is doing better and feels good about his progress" (*id.*); (3) Menard "has been busy doing yard work and things around the house" (AR 325); and (4) Menard is a single parent who cares for his children including picking them up, preparing their meals, and taking them to school (*see* AR 324-43). (AR 15.) Although Menard's daily activities may properly be considered in assessing Dr. Podell's opinions, they do not constitute "good reasons" for rejecting those opinions, given that the limitations assessed by Dr. Podell do not necessarily preclude Menard from being able to, *at times and for limited periods*, "work on his truck," do yard work and household chores, prepare basic meals,[5] and care for his children. As this Court recently stated, "a significant difference exists between [engaging in] sporadic daily activities and working a forty-hour week." *Waters v. Astrue*, No. 5:10-CV-110, 2011 WL 1884002, at *7 (D. Vt. May 17, 2011) (citing *Polidoro v. Apfel*, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999)). Moreover, the Second Circuit has long held that a claimant need not be an invalid, incapable of performing any daily activities, in order to receive disability

_____

[5] Menard testified that he cooks only "basic stuff" for his children, meaning "box stuff, simple stuff," and not involving anything fancy like sautéing or flipping a burger. (AR 52.) He further testified that it takes him an hour to an hour-and-a-half to do the dishes because he needs to take breaks. (*Id.*)

benefits. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988). Rather, "[a] claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." *Polidoro*, 1999 WL 203350, at *8; *see Balsamo*, 142 F.3d at 81 ("[W]here the claimant testified that he 'sometimes read[ ], watch[ed] television, listen[ed] to the radio, [and rode] buses and subways,' there is no evidence that [he] 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'") (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983)); *Williams v. Astrue*, No. 5:10-cv-212, 2011 WL 4380797, at *6 (D. Vt. Sept. 19, 2011).

The ALJ should not have "cherry-picked" from Dr. Podell's treatment notes, relying on statements that Menard was getting better and was able to perform certain limited activities for unknown amounts of time on isolated occasions, while ignoring other substantive detail. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F. 2d 174, 175-76 (2d Cir. 1983)). For example, although the ALJ acknowledged Dr. Podell's recording in a September 2008 treatment note that Menard was "busy doing yard work and things

around the house," she did not mention the Doctor's recording in the same note that

Menard was "feeling 'crappy'"; his shoulder was hurting; he had been getting a "tingling

sensation" in his fingertips; his hands felt stiff; and his hands had been uncontrollably

"jerk[ing] up in the air." (AR 325.) Likewise, while the ALJ noted Dr. Podell's

recording in a February 2008 treatment note that Menard was "working on his truck,"[6]

and "feel[ing] good about his progress," she failed to consider that the same note also

recorded that Menard was "sore all over" after a fall on ice approximately two-to-three

weeks earlier, had a swollen left elbow, experienced a "burning pain in [his] left forearm"

when he picked up his child, and was having double vision and blurriness related either to

his medication or fatigue. (AR 331.)

    Further, the ALJ did not explain how waking up Menard's children, driving them

to and from school, preparing their morning and evening meals, bathing them, and

putting them to bed – which appears from the record to be the full extent of the physical

activities required for Menard to "care" for his children (*see, e.g.,* AR 215) – reveals that

Menard was able to function at a level higher than that opined by Dr. Podell. The ALJ

failed to acknowledge in her decision that, although Menard is a "single father" (AR 15),

his mother helped him care for his children (AR 46, 56-57); he testified that, because of

his limitations, his children were "very independent" for their ages (five and six, at the

time of the hearing) (AR 41); and he stated in a Function Report that he "*tr[ies] to do*

---

[6] It is unclear what Dr. Podell meant when he stated that Menard was "working on his truck" (AR 331), but it is certainly plausible that such "work" adhered to the limitations included in Dr. Podell's Medical Source Statement, including for example, only occasional overhead reaching and no other reaching, only occasional stooping, no kneeling, and standing for only 30-60 minutes at a time (AR 608-10).

*what he can* [to] bath[e], dress[,] and feed [his children]" but he was "in to[o] much pain to do much " (AR 216 (emphasis added)).

The only other stated rationale for the ALJ's decision to afford little weight to Dr. Podell's opinions was Menard's "demonstrated abilities at the hearing." (AR 15.) The ALJ noted that, inconsistent with Dr. Podell's assessment, Menard "periodically stood . . . with apparent ease" and "was able to bend over rather far to testify into the microphone" during the hearing. (*Id.*) As Menard points out in his Reply (*see* Doc. 20 at 6 n.3), this type of emphasis on an ALJ's observations of the claimant's abilities and limitations exhibited during the hearing, commonly known as the "sit and squirm" index, has been criticized by courts in this Circuit. *See, e.g., Brandon v. Bowen*, 666 F. Supp. 604, 609 n.8 (S.D.N.Y. 1987) (citing *Aubeuf v. Schweiker*, 649 F. 2d 107, 113 (2d Cir. 1981)); *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 282 (E.D.N.Y. 2005) ("an ALJ's own observations of the claimant . . . are not entitled to much weight since the ALJ is not a medical expert"). Although an ALJ may consider his or her own recorded observation of the claimant at the hearing as part of the overall assessment of the claimant's credibility, *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citing 20 C.F.R. § 416.929(c)(3); SSR 96-97p, 1996 WL 362209 (July 2, 1996)), the Second Circuit has held that this observation, "being that of a lay person," is entitled to only "limited weight," *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)). Moreover, in this case, the ALJ's observation of Menard at the hearing does not constitute a "good reason" for rejecting Dr. Podell's opinions, given that the limitations assessed by Dr. Podell do not necessarily

preclude Menard from being able to periodically stand, testify, and even bend over at a 75-minute hearing.

Instead of relying on Menard's appearance at the hearing and isolated statements taken from Dr. Podell's treatment notes, had the ALJ considered the applicable regulatory factors, as well as whether Dr. Podell's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques, it is likely that her assessment of Dr. Podell's opinions would have been different. First, Dr. Podell is a specialist in rheumatology, the area relating to his opinions. (AR 455, 612.) Second, Dr. Podell and Menard had a long treatment relationship with frequent examinations. (AR 605.) Third, in support of his opinions, Dr. Podell cited medical signs and laboratory findings, including x-rays confirming osteoarthritis; laboratory testing showing a positive rheumatoid factor; and findings on examination of decreased range of motion/rotation of the spine, shoulders, hip, and the small joints of the hands; degenerative changes at the knees; pain over the left medial epicondyle; and the presence of eighteen fibromyalgia tender points. (AR 339, 354, 447, 455, 528-29, 605.)

Fourth and finally, after reviewing the record, I find that Dr. Podell's opinions are consistent with the medical record as a whole, including his own treatment notes. (*See, e.g.,* AR 307 (MRI of shoulder revealing significant joint disease), 308 (MRI of lumbar spine revealing degenerative disc disease), 317-21 (Dr. Halsey), 324-447 (Dr. Podell), 416-18 (Dr. Hall), 494-95, 590-91 (Dr. Segal), 615-18 (Dr. Orecchio).) Curiously, despite the existence of medical records from at least five treating physicians other than Dr. Podell, the only records cited by the ALJ in support of her finding that Dr. Podell's

opinions are inconsistent with the medical evidence of record are the few isolated notations contained in Dr. Podell's records, discussed above, and the opinions of non-treating agency physicians. (*See* AR 15-16.) But, as explained above, the notations do not say anything about Menard's ability to engage in activities on a consistent basis for full workdays; and "opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians," *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986).

Menard asserts that an August 2010 Functional Capacity Evaluation from Dartmouth-Hitchcock Medical Center, which was submitted to the DRB approximately one month after the ALJ issued her decision, is part of the record and supports Dr. Podell's opinions. (Doc. 14 at 17-18 (citing AR 282-305); Doc. 20 at 1-2.) In response, the Commissioner claims that the Evaluation is not part of the reviewable record because Menard failed to meet his burden under the regulations with respect to submitting new evidence to the DRB. (Doc. 19 at 8-9.) In the "Recommendations" portion of the Evaluation, Occupational Therapist Gregory Morneau, OT/L CWCE states that Menard should have "flexibility in his work position with sustained sitting, static standing, and stooping limited to 30 minutes"; dynamic standing tasks limited to 45 minutes; above-head activity limited to 5 minutes; and walking limited to "no more than 1/3 of his day at most 1000 [feet] at a time." (AR 284.) Morneau concludes that Menard "can tolerate light physical demand level work *on a part time basis 4-5 hours per day 3 days per week increasing as he can tolerate.*" (*Id.* (emphasis added).)

The Social Security Act contains explicit provisions regarding the DRB's consideration of new evidence after issuance of a decision by the ALJ.[7] *Washington v. Astrue*, No. 3:10CV01538 (CFD)(TPS), 2011 WL 4633302, at *4 (D. Conn. Oct. 4, 2011). Pursuant to 20 C.F.R. § 405.373(b), the DRB will accept new evidence if the claimant shows that (1) the new evidence has "a reasonable probability . . . alone or when considered with the other evidence of record, [of changing] the outcome of the decision"; and (2) that the Commissioner "misled" the claimant or the claimant could not have submitted the evidence earlier due to a "physical, mental, educational, or linguistic limitation" or some other "unusual, unexpected, or unavoidable circumstance" beyond the claimant's control. *Id.* Menard has not presented any reason for his delay in submitting the Dartmouth-Hitchcock Evaluation to the Commissioner. Nonetheless, it does not appear that he was dilatory in bringing the Evaluation to the DRB's attention, given that it appears to have been completed less than one week before it was submitted to the DRB. (*See* AR 280-84.) Moreover, the Evaluation does have a reasonable probability of changing the outcome of the ALJ's decision because it contains an opinion from an examining medical source that supports the opinions of treating physician Dr. Podell. It is likely that, had the DRB reviewed the claim during the time period allowed, it would have considered this in determining whether the ALJ should have afforded more

---

[7] In May 2011, those portions of the Social Security Act that addressed the DRB were eliminated, and DRB review was replaced with review by the Appeals Council. *See* Eliminating the Decision Review Board, 76 Fed. Reg. 24802-01, 2011 WL 1637614 (May 3, 2011) ("[W]e are eliminating the DRB and restoring the Boston region to most of the same rules and procedures at the Appeals Council level under parts 404 and 416 that we currently follow in the rest of the country."). Because elimination of the DRB did not occur until after all relevant dates in this case, however, the DRB regulations apply here.

than little weight to Dr. Podell's opinions.  Moreover, although the Evaluation is based

on testing and analysis that was conducted after the relevant time period and does not

contain a retrospective component, it is at least noteworthy that the opinion contained

therein is contrary to the ALJ's RFC determination.  Specifically, the Evaluation

concludes that Menard is able to work only on a part-time basis with significant

restrictions in sitting, standing, stooping, and walking (AR 284); whereas the ALJ

determined that Menard's RFC was for light work with no limitations on sitting,

standing, stooping, or walking (AR 13).

The facts at issue here are more like those in *Washington*, cited by Menard, than

those in *Garcia v. Astrue*, No. 3:09-CV-319 (CFD)(TPS), 2010 WL 1072350 (D. Conn.

Feb. 18, 2010), cited by the Commissioner.  In *Washington*, like here, there was a lack of

evidence of the plaintiff's dilatory conduct and the new evidence contradicted the ALJ's

RFC determination.  For these reasons, even though there was no specific "unusual,

unexpected, or unavoidable circumstance" beyond the plaintiff's control preventing him

from submitting the evidence earlier, *Washington*, 2011 WL 4633302, at *7, the court

found that, "given the beneficent and remedial purposes of the Social Security Act," the

new evidence "satisfied the regulatory criteria for consideration" by the DRB, *id.* at *8

(citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) ("[C]ourts have not

hesitated to remand for the taking of additional evidence, on good cause shown, where

relevant, probative, and available evidence was either not before the [Commissioner] or

was not explicitly weighted and considered by him, although such consideration was

necessary to a just determination of the claimant's application.") (citations omitted)).

Also noteworthy, in both *Garcia* and *Washington*, the DRB actually considered whether the new evidence satisfied the regulatory criteria. Here, however, the DRB did not complete (or even begin, as far as I can tell from the record) its review of the claim in the required time (*see* AR 3); therefore, the DRB did not have an opportunity to consider whether the new evidence met the regulatory criteria for being admitted. Given the above conclusion that the ALJ erred in analyzing the opinions of treating physician Dr. Podell, remand is required regardless of whether the Court considers the Dartmouth-Hitchcock Evaluation; thus, the Court need not determine whether this new evidence alone would require remand. The ALJ should, however, consider this new evidence on remand, as it may affect the determination of disability.

## II. The ALJ's Credibility Determination Is Not Supported by Substantial Evidence.

The ALJ should also make a new assessment of Menard's credibility on remand. It is the province of the Commissioner and not the reviewing court to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Thus, if the Commissioner's credibility findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). These reasons "must be grounded in the evidence

and articulated in the determination or decision." *Id.*

The ALJ found that Menard's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they [we]re inconsistent with the [ALJ's RFC] assessment." (AR 14.) The ALJ based this finding largely on her determination that Menard "is a single father, does outdoor work [i]n his yard, works on his truck, takes his children to school, makes them meals, and performs household chores." (AR 15.) This was not a sufficient basis for finding that Menard's allegations of pain and resulting functional limitations were not credible. As explained above, in determining whether a claimant is disabled, the Commissioner must consider whether the claimant has the ability to work "on a sustained basis." 20 C.F.R. § 404.1512(a). The ability to perform activities, even work-related activities, sporadically and for short periods of time, is not a basis upon which to deny disability. *See Balsamo*, 142 F.3d at 81; *Polidoro*, 1999 WL 203350, at *8. Moreover, a claimant's ability to perform basic activities of living – including bathing, dressing, and preparing simple meals, for example – does not constitute substantial evidence to support a finding that the claimant is able to work in a competitive environment. *See, e.g., Garcia v. Heckler*, 625 F. Supp. 491, 497-98 (S.D.N.Y. 1985) (evidence that claimant could dress, wash dishes, make beds, shop, take care of plants, occasionally visit friends, and attend church found insufficient to support conclusion that she was capable of engaging in these activities for sustained periods comparable to those required to hold a sedentary job); *Murdaugh v. Sec'y of Health & Human Servs.*,837 F.2d 99, 102 (2d Cir. 1988) ("that [claimant] . . . waters his landlady's garden, occasionally visits friends[,] and is able to get on and off an

examination table" does not preclude disability).

Here, although Menard cared for his children, and reported having worked on his truck on one occasion and done some yard work on another occasion, the record demonstrates that "most of the time," he sat at home and did nothing. (AR 215; *see also* AR 41.) Further, the record demonstrates that Menard had difficulty buttoning his clothes, writing, and talking on the telephone (AR 216); could do only small amounts of laundry and was unable to do any home repairs (AR 217); needed help "keeping a steady pace" when doing laundry because he worked so slowly due to pain (*id.*); and "tr[ied] to do what [he] c[ould]" to bathe, dress, and feed his children but did no more (AR 216). With respect to his children, although the ALJ focused heavily on the fact that Menard was a single father who cared for two children, neither the ALJ nor the Commissioner point to evidence that Menard did anything other than the bare minimum activities of daily living with his children – for example, there is no evidence that he played sports with them, took them to events, or went on walks with them. And the record demonstrates that Menard's children were in school during the relevant period, so he was not responsible for them for full days, at least during the week. Moreover, Menard's mother testified at the administrative hearing that she "had to help [Menard] with the kids," that she had the kids "a lot," and that she "tr[ied] to do activities with the kids . . . because there [are] so many things that [Menard] can't do anymore." (AR 57; *see also* AR 46.)

The ALJ also supported her negative credibility determination by noting Menard's history of non-compliance with treatment, which she stated "negatively impacts his

credibility." (AR 16.) Specifically, the ALJ stated that a May 2007 treatment note indicated that Menard had three "no-shows" to his primary care physician, Dr. Alden Hall. (*Id.* (citing AR 419).) Menard does not respond to this argument, and a review of the record reveals that there were serious issues with Menard's compliance with treatment. (*See, e.g.,* AR 412-19.) This in itself, however, was not reason for the ALJ to find Menard non-credible. On remand, the ALJ should weigh this factor, along with all others, in determining whether Menard's allegations of pain and functional limitation are credible.

Finally, the ALJ supported her credibility determination by noting that "recent hospital notes document that [Menard] has significant reports of pain, but that his symptoms are disproportionate to the findings." (AR 16 (citing AR 621).) But the ALJ failed to include other relevant portions of the March 2010 hospital note, which state: "[c]hronic pain: [symptoms] are disproportionate to findings, *but he could have an ulnar neuropathy - EMG*. Dr. Podell wants disability work capacity - ordered." (AR 621 (emphasis added).) The record reveals that, approximately one month later, Dr. Orecchio reported that an EMG would be unnecessary as he had completed a nerve conduction study which revealed "moderate entrapment of the median nerve at the carpal tunnel." (AR 618.) Dr. Orecchio stated that Menard would "need to take [treatment of his limb discomfort] a bit further," presumably meaning that he would need to undergo treatment more aggressive than the steroid injections that he had already received. (AR 615.) The record further reveals that, approximately four months later, the Dartmouth-Hitchcock Functional Capacity Evaluation (which appears to be the "disability work capacity"

report ordered by Dr. Podell in the March 2010 hospital note) was completed, and concluded that Menard could not sustain work activities on a full-time basis, as discussed above. (AR 284.) In determining Menard's credibility, the ALJ should have taken this other relevant information into consideration instead of relying solely on the isolated statement that "symptoms are disproportionate to the findings." (AR 16.)

## Conclusion

In light of the ALJ's errors in assessing Dr. Podell's opinion and determining Menard's credibility, the ALJ's RFC determination and step-five decision that Menard could perform other work existing in significant numbers in the national economy were necessarily affected. Moreover, given the VE's testimony that a person with the limitations imposed by Dr. Podell would not be able to work, it is likely that the ALJ would have decided Menard's claim differently had she properly considered Dr. Podell's opinion. Therefore, the Court need not reach Menard's claim regarding the hypothetical question posed to the VE at the administrative hearing and the ALJ's resulting step-five determination. These issues will necessarily be re-assessed on remand.

For these reasons, I recommend that Menard's motion (Doc. 14) be GRANTED, the Commissioner's motion (Doc. 19) be DENIED, and the matter be REMANDED for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 14th day of February, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).